1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE MIDDLE DISTRICT OF ALABAMA

3                  EASTERN DIVISION

4

5   UNITED STATES OF AMERICA

6       vs.                CASE NO.:  3:10cr14-WKW

7   JERRY HOLLAND,

8          Defendant.

9

10

11                  REDACTED TRANSCRIPT

12              * * * * * * * * * *

13              SENTENCING PROCEEDINGS

14              * * * * * * * * * *

15          BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES

16   DISTRICT JUDGE, at Montgomery, Alabama, on Wednesday, October 6,

17   2010, commencing at 3:10 p.m.

18   APPEARANCES:

19   FOR THE GOVERNMENT:     Ms. Susan R. Redmond
                            Assistant United States Attorney
20                          OFFICE OF THE UNITED STATES ATTORNEY
                            131 Clayton Street
21                          Montgomery, Alabama  36104

22   FOR THE DEFENDANT:     Mr. Aimee Cobb Smith, Attorney at Law
                            LAW OFFICES OF AIMEE C. SMITH
23                          22 Scott Street, Second Floor
                            Montgomery, Alabama  36104

24
              Proceedings reported stenographically;
25                transcript produced by computer.

```
 1        (The following proceedings were heard before the Honorable
 2        W. Keith Watkins, United States District Judge, at
 3        Montgomery, Alabama, on Wednesday, October 6, 2010,
 4        commencing at 3:10 p.m.:)
 5            THE CLERK:  Please remain seated.  Court is in session.
 6            THE COURT:  All right.  We're continuing in Case Number
 7    10cr14, this time with the sentencing of Mr. Jerry Holland.
 8            So for the record, if the government would establish
 9    who's here.
10            MS. REDMOND:  Judge, Susan Redmond for the United
11    States.  And seated at counsel table with me is DEA Agent Tom
12    Halasz.
13            THE COURT:  All right.  And for the defendant?
14            MS. SMITH:  Thank you, Your Honor.  Aimee Smith,
15    attorney for the defendant Jerry Holland.
16            THE COURT:  Good afternoon.
17            Good afternoon, Mr. Holland.
18            THE DEFENDANT:  Good afternoon, sir.
19            THE COURT:  If you and Ms. Smith would approach the
20    podium, please.  I understand that there is no plea agreement in
21    this case; is that correct?
22            MS. REDMOND:  That is correct, Your Honor.
23            MS. SMITH:  Judge, if I may, Mr. Holland was originally
24    represented by Joe Van Heest, and then there was a conflict.  He
25    withdrew, and then Jim Cooper was appointed to represent him.
```

1    And then Mr. Holland hired me probably around August of this

2    summer.

3              THE COURT:  So you are retained?

4              MS. SMITH:  Yes, Your Honor.

5              THE COURT:  All right.  Now, have you and your client

6    had an opportunity to review the presentence report?

7              MS. SMITH:  Yes, Your Honor, we have.

8              THE COURT:  Are there objections?

9              MS. SMITH:  Your Honor, originally there were two

10   objections that were made.  Objection number one had to do with

11   the amount.  We would withdraw that objection.  Objection number

12   two, if I recall correctly, had to do with the gun enhancement.

13             We would ask this Court to consider taking away the

14   two-point addition from the calculation because the same -- I

15   would adopt and incorporate the same arguments made by the

16   codefendants in this case or their counsel, and I would just

17   recommend to the Court that we don't believe that the government

18   can show that the gun was held in furtherance of the commission

19   of the conspiracy.  And we argue that because we say that since

20   Mr. Holland did not have knowledge of the gun, none of the other

21   codefendants, as I understand from the discovery, had any

22   knowledge or were aware in any way that there was a gun present.

23             And I believe from the sentencing memorandum which, by

24   the way, Your Honor, I did not get but I have reviewed, that the

25   government said in that sentencing memorandum that they could

1  not -- I believe they said they could not sufficiently establish

2  to the Court -- and I don't want to misquote that.

3          THE COURT:  I've got the memorandum.  I've read it.

4          MS. SMITH:  Thank you.  Judge, basically, if they

5  can't -- if they can't meet the required evidence to show that

6  the gun was involved, we would ask the Court not to consider it.

7          And I understand that the government is offering or

8  agreeing to the safety valve to give us the minus two points.

9  But the problem we have is that in the end, Mr. Holland, who has

10  had a drug addiction to marijuana for some time, would like to

11  apply for the programs as well to get the drug treatment.  He

12  would like to additionally try to seek, you know, a work camp,

13  and he would like to try eventually to get into a halfway

14  house.  And I think that that can negatively affect him and his

15  ability to get credit in order to get into either one of those

16  programs.

17          We would ask the Court, number one, to find that it

18  does not apply because they cannot -- the government cannot

19  establish that it was done in furtherance of the conspiracy.

20          THE COURT:  That's not the government's burden.  It's

21  your burden under *U.S. v. Hall* to establish that it was clearly

22  improbable that the gun was used in furtherance if the gun was

23  present, and the gun was present.

24          MS. SMITH:  And Your Honor, I may be wrong -- and I'll

25  be honest; I don't have case law in front of me -- but I thought

1    it was the government's burden to show by a preponderance of the

2    evidence that it was in fact involved.  And once they meet that

3    burden, it would then shift to the defendant to show that it was

4    not probable that it would be used.

5         THE COURT:  Well, now, let's straighten that out.

6    We've been -- I've been relying upon *U.S. v. Hall* that says --

7    my understanding of *Hall* -- and I haven't read it lately, but

8    I've used it frequently over the years and Probation has used it

9    in this report -- is that when a gun is present, then -- during

10   the -- in the location with the drugs, primarily.  Let me just

11   find the exact language.

12        In *United States versus Hall*, 46 F.3d, page 62, our

13   circuit found that if the prosecution shows that the firearm was

14   present at the location of the criminal conduct, the evidentiary

15   burden shifts to the defense to prove that the connection

16   between the firearm and the offense is clearly improbable.

17        So it's an evidentiary burden.  It shifts to the

18   defendant when the gun is present.

19        MS. SMITH:  Correct.

20        THE COURT:  Now, I've had arguments all along that,

21   well, a coconspirator had a gun in his car somewhere else.  And

22   I've -- you know, I've found that that gun was not present and

23   present in furtherance of the conspiracy.  But I've already

24   ruled in this case that -- or noted in this case that -- again,

25   what's the man's name?

1          MS. REDMOND:  Mr. Crowell.

2          THE COURT:  Mr. Crowell.

3          MS. REDMOND:  Yes, sir.

4          THE COURT:  Crowell.

5          MS. SMITH:  Judge, are you talking about the one that

6   you've ruled in?  Francisco Rodriguez is the one you issued the

7   first ruling in.

8          THE COURT:  The first ruling and then the second

9   ruling, which are codefendants in this case.  And I basically

10  intend to rule the same way in this case.  I don't want to be

11  inconsistent.  And I understand that you've adopted all those

12  arguments.

13          And the government, I assume, is adopting your

14  arguments.  And I've read your sentencing memorandum.

15          The facts of the matter are that the gun was present.

16  The facts of the matter are that Mr. Crowell had a business

17  there, but part of his business was illegal.  Part of his

18  business was dealing in shiploads -- truckloads of drugs, of

19  marijuana.  And thirdly, he was physically present with your

20  client unloading the truck with the gun in his pocket.  So I

21  take that to be in furtherance of the conspiracy.

22          And I -- unless you've got another argument that hasn't

23  been made by other counsel, I would find that it's not clearly

24  improbable that the gun was not used in furtherance of the

25  conspiracy.  Mr. Crowell was protecting himself and I assume

1    anybody else who might have shown up in their clandestine

2    efforts to unload this truck.

3         MS. SMITH:  Your Honor, the only thing I might add was

4    already included as part of the original objections that were

5    filed, that it was not the type of gun or weapon normally used

6    in the furtherance of a gun transaction or drug trade.  It's a

7    .38 Derringer, and that's not typically the type that would be

8    used.  And I think we've already said earlier, and I'm sorry to

9    be redundant, but it was a licensed gun.  Mr. Crowell did have a

10   permit for it.  He did actually have another legitimate

11   business.

12        I understand the Court's position.  We're just asking

13   the Court to please consider it, because even though we're going

14   to get the safety valve minus two points, it is something -- and

15   we're not asking just for that reason.  But when the Court is

16   looking at this, we would ask that you take into consideration

17   that it will negatively affect him, Mr. Holland, in his ability

18   to get the credit for the drug treatment program.

19        THE COURT:  Now, that's the first I've -- somebody

20   raised that today.  That's the first I've ever heard of that.  I

21   don't have any evidence of that.  I don't know -- you're saying

22   that, but what evidence do you have that that affects the

23   program?

24        MS. SMITH:  Judge, it's just my understanding in

25   speaking to other counsel.  I've asked around to try to find

1  some law on it.  And I did not get to go back to my office today

2  to try to bring anything to the Court.  I would be glad to try

3  to provide something.  But it's my understanding that when you

4  get into the drug program, that while you can participate if you

5  had a gun enhancement, that you don't actually get to have the

6  year that you leave early.  It's not a reduction.  In other

7  words, you can participate, but you don't get complete credit

8  because of it.

9       THE COURT:  Well, I hear you saying that, and I don't

10  think there would be any law on it.  I think that's a BOP

11  regulation.

12       But does Probation know anything about that?

13       PROBATION OFFICER TOLBERT:  I'm not aware.  I knew that

14  the gun enhancement may affect their classification once they

15  enter the BOP, but I'm not sure of any effect it has on their

16  ability to enter a drug program.

17       THE COURT:  Okay.  Well, guns and drugs are rightly the

18  subject of public policy in this country.  And Judge Carnes and

19  other judges on the Eleventh Circuit have noted that strong,

20  strong connection in the traffic of drugs and in weapons.  So to

21  the extent that there is a down side to this and a weapon being

22  possessed and weapons being dangerous as they are, that's just a

23  risk that a defendant takes when he participates in a conspiracy

24  of this nature.

25       Now, I have considered the fact that it was a

 1   Derringer.  I find it interesting that it was a .38-caliber

 2   Derringer.  I guess they make them all the way up to .45s,

 3   maybe, but .38 is a pretty big caliber for a Derringer.  But

 4   nevertheless, I have considered that.  I had noted that.

 5          And as far as your argument about the effect, that's a

 6   3553 argument, but -- in the nature of a 3553 argument on his

 7   effect of getting credit for his drug treatment time.  So for

 8   reasons previously stated and just recently reiterated, I am

 9   denying this -- overruling this objection and I find that the

10   gun enhancement does apply.  And that's consistent with the way

11   I've ruled in these cases for years.

12          Usually, as I said, the issue is when the gun is in a

13   car somewhere and not at the location of the crime.  Here, the

14   man is unloading the marijuana with the gun in his pocket.  He's

15   opening the gate with the gun in his pocket.  He's doing it

16   three or four, five, six times.  It's huge amounts of marijuana,

17   bales and bales of drugs.  So I find that it is not clearly

18   improbable that the gun was used in the furtherance of the

19   conspiracy.

20          Now, is that your only objection?

21          MS. SMITH:  That was, Your Honor.

22          THE COURT:  Okay.  I believe we have a -- or do we have

23   a motion for the third level for acceptance of responsibility?

24          MS. REDMOND:  Thank you, Your Honor.  Yes.  The

25   government now moves that pursuant to United States Sentencing

1  Guideline Section 3E1.1(b), that the defendant be granted the

2  third level or third point for acceptance of responsibility

3  pursuant to the Court granting the first two levels, which the

4  government would recommend be given at this time.

5       THE COURT:  All right.  I'm going to adopt the

6  motion -- I'm going to grant the motion and adopt Probation's

7  recommendation that all three levels be granted in this case.

8       You also have a pending motion for a six-level

9  departure for 5K in this matter.  Is there evidence that you

10  want to put on the record in support of that?

11       MS. REDMOND:  Judge, there is.  I just have one -- if I

12  could approach counsel for just one second.

13       THE COURT:  You may.

14     (Brief pause)

15       MS. REDMOND:  Judge, for the purposes of the record, we

16  believe that we may proceed in open court.  There are no parties

17  or individuals other than court personnel and/or law enforcement

18  present to hear the facts as stated.

19       THE COURT:  Do you want these -- this statement sealed?

20       MS. REDMOND:  Yes, sir.

21       THE COURT:  All right.  And the previous two as well.

22       MS. REDMOND:  We were going to make a written motion.

23  But yes, Your Honor, we would ask that the proffers made by the

24  government in respect to cooperation be sealed at this time.

25       THE COURT:  All proffers in this case.

1            MS. REDMOND:  All proffers in this case, and that being

2  3:10cr14.

3            THE COURT:  All right.  Ms. Roy, I'm granting that

4  motion, the oral motion to seal all proffers of evidence in

5  support of 5K motions in this case.  Go ahead.

6       (This portion of the transcript has been filed under seal

7        pursuant to the Court's oral order)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2

3

4

5

6

7

8

9

10

11

12

13

14          THE COURT:  All right.  On the government's motion, a

15   six-level downward departure under 5K1.1 is granted.

16          MS. SMITH:  Thank you, Your Honor.

17          THE COURT:  Now, the last matter is does the government

18   have any objection to this defendant qualifying for safety valve

19   treatment?

20          MS. REDMOND:  Judge, we do not.  And I know in my

21   sentencing memorandum I did set out and we do believe that the

22   facts establish that Mr. Holland had an organizational role.

23   But in this particular case, we do not object to any of the

24   factual findings and determinations contained within the PSR,

25   and we would agree that safety valve should be given.

1          THE COURT:  All right.  Well, it sounds like he was

2    close to getting an organizational role, but he didn't.  And I'm

3    going to adopt Probation's recommendation on that.  And I find

4    that this defendant does qualify for safety valve treatment, not

5    only for the two-level offense characteristic downward

6    departure -- not a departure, but a two-level reduction, but

7    also that he avoids by that treatment the statutory minimums.

8          Now, Ms. Smith, do you or your client have anything to

9    say in mitigation before the Court pronounces sentence in this

10   case?

11         MS. SMITH:  Yes, Your Honor, briefly.

12         THE COURT:  Well, hold on.  I'm sorry.  I haven't given

13   you my calculation.  Let me interrupt you.

14         MS. SMITH:  Thank you.

15         THE COURT:  Let me give you the guideline

16   calculations.  In compliance with Justice Breyer's majority

17   opinion in *Booker*, this Court, while not bound to apply the

18   guidelines, has consulted them and has taken them into account

19   on the issue of the appropriate range of sentence to be imposed

20   in this case.  Having ruled upon the objections to the

21   presentence report, the Court adopts the factual statements

22   contained in the presentence report with specific findings that

23   prior to the government's downward departure motion, the offense

24   level is 29, the criminal history category is I, the guideline

25   range is from 87 to 108 months, the supervised release period is

1   from three to five years, and the fine range is from 15,000 to

2   $4 million.

3          Furthermore, because the Court has granted the

4   government's motion for downward departure, the Court finds that

5   the total offense level is 23, criminal history category is I,

6   the guideline range is from 46 to 57 months -- the supervised

7   release period remains at three to five years?

8          PROBATION OFFICER TOLBERT:  Yes, Your Honor.

9          THE COURT:  And the fine range, Mr. Tolbert?

10         PROBATION OFFICER TOLBERT:  Ten thousand to four

11  million, Your Honor.

12         THE COURT:  Ten thousand to $4 million after the grant

13  of the government's downward departure motion.

14         Does the defendant dispute these calculations?

15         MS. SMITH:  No, Your Honor.

16         THE COURT:  Does the government?

17         MS. REDMOND:  No, Your Honor.

18         THE COURT:  All right.  Now, then, do either you or

19  your client, Ms. Smith, have anything to say in mitigation or

20  otherwise before I pronounce sentence in this case?

21         MS. SMITH:  Yes, Your Honor.  Thank you.  Your Honor,

22  the only thing I would want to bring to this Court's attention

23  is that Mr. Holland basically was someone who was a hard-working

24  citizen.  He had been involved in the military.  He served

25  substantial time.  And if I say this incorrectly, I know he'll

1   correct me.  He was for six years air crew lift support

2   technician.

3           THE DEFENDANT:  Life support.

4           MS. SMITH:  Told you he would correct me.  The life

5   support technician.  He was responsible for inspecting the

6   flight equipment and survival kits for the U.S. Air Force.  He

7   did a very good job.  He was honorably discharged; and at the

8   time, he was a rank -- I believe it's an E-4.

9           THE DEFENDANT:  Yes.

10          MS. SMITH:  Mr. Holland, at some point in his life,

11  fell into some hardships financially, which I think would have

12  put him in a situation to make him more vulnerable than someone

13  with his normal personality would be.  He was -- became a victim

14  to a Ponzi scheme, which pretty much, Judge -- it was about

15  $42,000.  And that company is now considered -- let's see.

16  The -- that's right.  The Capital Consortium Group.  And the

17  District of South Carolina is pursuing charges against that

18  group for this Ponzi scheme.  But it was $42,000, 28,000 of

19  which he applied to a second mortgage, 14,000 that came from his

20  only savings account that he had left.

21          And he fell into a hardship where he allowed some

22  friendships that he probably would not have allowed to be around

23  him to encourage him to do something he probably wouldn't have

24  done.  And Judge, I think he can speak to it a little bit better

25  than I can and speak from his heart about how that affected

1   him.  But I want you to know that just given his situation, his

2   background, I don't think that he's someone who would have done

3   that.

4           During the time of this crime, he was working as a --

5   doing janitorial services for $10 an hour.  He had gone from

6   being a radio disc jockey to being a program director for the

7   radio stations.  And this is where he made the contact with some

8   of the unnamed conspirators.  And because of it, I think that

9   they saw the opportunity of someone who was in a dire situation

10  who needed money, who was losing his house.  He had already been

11  a victim a Ponzi scheme, and I think they truly saw that they

12  could encourage him to become as involved as he was.  They knew

13  that he was trustworthy.  And he is not someone to do this.  But

14  I would like to the Court to hear from him.

15          Briefly, I wanted to tell the Court something else, if

16  I may.  Forgive me.

17    (Brief pause)

18          MS. SMITH:  Judge, Mr. Holland has expressed to me that

19  he has had a drug problem.  I know this was part of his PSR.  We

20  would ask the Court to consider some drug treatment.  I hope I'm

21  wrong on the policy that would be involved that might affect him

22  because of the gun enhancement; but nonetheless, he would like

23  to have the drug treatment.

24          We would ask the Court to please consider going with

25  the lower end of the recommendation, the 46 months.

1          And then Mr. Holland would like to speak to you.

2          THE COURT:  Go ahead, Mr. Holland.

3          THE DEFENDANT:  Thank you for this opportunity to

4    speak.  First I'd like to say that I've let a lot of people

5    down, including my children, MXXXXXXX and RXXXXX, my family, my

6    community.

7          Most people are surprised to find out that I was

8    involved in illegal activity.  I was known as a mentor to the

9    young.  A lot of times people come to me for advice.  I

10   worked -- like she said, I was honorably discharged, U.S. Air

11   Force, six years.  I worked for Clear Channel Radio from 1999 to

12   2007.  Early 2007, I tried to launch an independent promotion

13   company.  I also made an investment with my home equity and life

14   savings that turned out to be a Ponzi scheme, was recognized

15   about July of '07 that I wasn't going to get the money back, was

16   told that the Capital Consortium Group was basically a rip-off

17   and they were taking people's money.

18         I was under -- I was bitter and under a lot of

19   pressure, because I was going to lose everything.  So I made a

20   bad decision.  And I know that.  If I wouldn't have been under

21   those -- under that type of pressure, then I wouldn't have got

22   involved with anything illegal.

23         Also, I can say I was just out of alignment with what

24   my mother taught me about hard work.  Out of alignment with what

25   I know God says contentment should be.  In the six months that

1    I've been incarcerated, I've had a chance to -- to check back in

2    on what I should be content with, and it has nothing to do with

3    personal property.

4          I would also like to say that we -- as far as coming

5    back and doing anything wrong, it's out of the question.  I was

6    too old to get involved in illegal activity, will be too old

7    when this is over with.  If there is any alternative to serving

8    the community or paying my debt to society in an alternative

9    manner, it would be much more effective than incarceration.

10   However, if incarceration is what I get, I ask the Court to

11   please find favor on me and sentence me to the low end.

12         Once again, coming back to court for something wrong

13   like this is -- is not going to happen.  And I just really hope

14   that you find favor on me today.  Thank you.

15         THE COURT:  Thank you, sir.

16         Government?

17         MS. REDMOND:  No, sir.  For the purposes of the record,

18   however, I noted that there was a -- both of the defendants'

19   children were mentioned by name.  One of those was a younger

20   child.  And I just wanted to make a note that we need to have

21   those names removed for the protection of the children.

22         THE COURT:  Risa, do you need a motion from somebody or

23   an order to redact those names?

24         COURT REPORTER:  No, sir.  We can do it after the fact

25   by redaction request.

```
1              MS. REDMOND:  It was just my effort for Risa to put it
2    in the record so that it clicks in my head later on.
3              THE COURT:  All right.
4         (This portion of the transcript has been filed under seal
5           pursuant to the Court's oral order)
6
7
8
9
10
11
12
13
14
15             THE COURT:  All right.  The sentence will now be
16   stated, but you'll have a final chance to make legal objections
17   before the sentence is imposed.
18             Mr. Holland, I have a few things to say to you.
19   Sometimes you suffer for doing what's right, but you always
20   suffer for doing what's wrong, I believe.  And so you've got a
21   little bit of suffering coming both ways today.  You've been
22   doing some wrong things, and it's not just getting involved in
23   this conspiracy.  But you've had an alcohol and a marijuana
24   problem for a long time, according to the presentence report,
25   every day.  And those kinds of things are cumulative in that it
```

1  puts you in the presence of people who have to deal and sell you

2  or either grow -- you have to grow illegally these illegal

3  substances.

4        So I want to commend you for doing the right thing.

5  And actually, a six-level reduction here is pretty substantial.

6  I don't see many of those.  And I don't think I've ever granted

7  but one that was more than six since I've been on the bench.  So

8  you have really dodged a long-time, long-term bullet here by

9  coming forward.

10        I understand that you're suffering for having done the

11  wrong thing.  Some of the suffering you're doing for the

12  right -- having done the right thing just goes with this turf

13  that you're in.  It does create a potential danger to yourself

14  and your family, because that's -- guns and drugs just go

15  together and threats go together.  And I've had other

16  defendants -- I had a Mexican defendant about six months ago

17  whose daddy has already had to sign over the family farm to an

18  unindicted coconspirator down in Mexico and is under daily

19  threats from an unindicted coconspirator down in Mexico and has

20  cost his family whatever little wealth they had in Mexico just

21  because he was up here dealing illegally.

22        The danger of somebody carrying a gun and you getting

23  stuck with it.  It's like going to rob a bank with somebody

24  who's got a gun.  Whether you know it or not, when you go in to

25  rob a bank and all of the sudden they pull out a gun, you didn't

1   even know they had the gun but they use it in the furtherance of

2   the robbery, you know, you can get hung with that.  So that's

3   kind of an unintended consequence.

4            Thirdly, you've lost your reputation somewhat in the

5   community.  You're a military man with a good career.  You've

6   been a mentor.  Apparently your mama taught you right.  And you

7   said -- you said you just got out of line.  You're misaligned.

8   It's like the tire on the front end of a car.  It gets out of

9   line, it wears a lot faster and it gets ragged a lot faster.

10  And you come in here today ragged.

11           So I hear what you're saying.  And you've had a good

12  work record.  You've worked hard.  You worked hard as a janitor

13  after you lost everything in this Ponzi scheme.  So I've taken

14  all that into consideration; and I've considered the guidelines

15  and evaluated the reasonableness of a sentence through the lens

16  of Section 3553, which I'm required to do.

17           And pursuant to my authority -- I'm sorry.  It is the

18  judgment of the Court that you are hereby committed to the

19  custody of the Federal Bureau of Prisons to be imprisoned for a

20  term of 46 months.  I find that the low end is appropriate, and

21  I accept your lawyer's good arguments and your good-faith

22  statement to me that that is the appropriate sentence.

23           Having considered the computations and taken them under

24  advisement -- that is, the guideline computations -- the Court

25  finds that the sentence imposed is sufficient but not greater

1    than necessary to comply with the statutory purposes of

2    sentencing.  And I find it to be reasonable considering the

3    nature and circumstances of the offense, the amount of drugs

4    involved, the extensiveness of the conspiracy and your somewhat

5    more in-depth involvement in it, even though you didn't get

6    charged any points for that.

7          But I've also considered your history and

8    characteristics.  I think the sentence makes a statement to

9    reflect the seriousness of the offense and to promote respect

10   for the law.  And one of the things I'm always concerned about

11   is not giving a disparate sentence among defendants.  In other

12   words, other defendants in your circumstances need to get about

13   the same sentence all over the country so that it's not unfair.

14         I do recommend that you be designated to a facility

15   where intensive drug treatment is available.  Upon release from

16   imprisonment, you shall be placed on supervised release for a

17   term of four years.  Now, this sentence of 46 months is in each

18   count to run concurrent to each other.  The supervised release

19   is as to each count four years to run concurrent with each

20   other.

21         And I'll pause here to make the comment that addiction

22   is a tough thing.  Alcohol addiction is a tough thing.

23   Marijuana addiction is a tough thing.  You're going to have to

24   be real intentional to overcome this; because when you get out,

25   you're going to be drug tested.  And any marijuana involvement,

1  hanging around with people, getting it on your clothes, any --

2  you know, keeping bad company could get you back in trouble.  So

3  I'm going to have to tell you that you need to take to heart

4  whatever treatment you get and take to heart the comments your

5  mama gave you raising you right.  Take to heart the fact that

6  you're 44 and you're going to be, you know 46, seven, when you

7  get out, 48, maybe.  And you're right; you're too old.

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Okay?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  So you're going to be on supervised release

12  for four years.  Within 72 hours of release from custody, you

13  shall report to the probation office in the district to which

14  you are released.  While on supervised release, you shall comply

15  with the mandatory and standard conditions of supervised release

16  on file with this Court.

17          I'm also going to order the following special

18  conditions.  You shall participate in a program of drug testing

19  administered by the United States Probation Office for substance

20  abuse, which may include testing -- which will include testing

21  to determine whether you have reverted to the use of drugs.  You

22  shall contribute to the cost of any treatment based on ability

23  to pay and the availability of third-party payments.  You shall

24  submit to a search of your person, residence, office, or vehicle

25  pursuant to the search policy of the Court.

1          Now, based on your inability to pay, the Court waives

2    the imposition of a fine.  There will be no fine.  But you do

3    owe the U.S. District Court Clerk a special assessment fee of

4    $200, which you shall pay immediately.

5          The Court finds there is no identifiable victim who

6    incurred a financial loss as a result of this offense;

7    therefore, there is no restitution.

8          Now, are there any objections to the sentence or to the

9    manner in which the Court pronounced it?  First from the

10   government.

11         MS. REDMOND:  No objections.

12         THE COURT:  From the defendant?

13         MS. SMITH:  No objections, Your Honor.

14         THE COURT:  All right.  The sentence is ordered imposed

15   as stated.

16         Mr. Holland, you have the right to appeal the sentence

17   imposed within 14 days.  If you cannot afford the cost of an

18   appeal, you have the right to apply for leave to appeal *in forma*

19   *pauperis*.  In other words, you may apply to proceed with your

20   appeal at no cost to you.

21         Anything further from the government?

22         MS. REDMOND:  No, Your Honor.

23         THE COURT:  Anything further from the defendant?

24         MS. SMITH:  Nothing further, Your Honor.

25         THE COURT:  All right.  Mr. Holland, everybody in this

1  room wants you to succeed.  I want you to succeed more than

2  anybody in here, because I don't want to ever see you back

3  here.  Okay?

4          THE DEFENDANT:  Yes, sir.  I won't let you down.

5          THE COURT:  All right.  Thank you, sir.  You are

6  remanded to the custody of the United States Marshal.  I wish

7  the best for you.

8          MS. SMITH:  Thank you, Your Honor.  May I be excused?

9          THE COURT:  You may be.  It's good to see you.  Thanks

10 for coming.

11         MS. SMITH:  Thank you, Judge.

12     (Defendant not present)

13         THE COURT:  Before y'all leave, did Mr. Holland plead

14 to count one, two, and three?

15         MS. REDMOND:  He shouldn't have been charged in count

16 three.  Was he?  I apologize.

17         THE COURT:  Just -- count three is the --

18         MS. REDMOND:  It should be a 924.

19         THE COURT:  It's just against Mr. Crowell.  All right.

20 Fine.  Thank you.

21     (Proceedings concluded at 3:47 p.m.)

22                     * * * * * * * * * *

23

24

25

```
 1                COURT REPORTER'S CERTIFICATE

 2          I certify that the foregoing is a correct transcript

 3  from the record of proceedings in the above-entitled matter.

 4          This 13th day of January, 2011.

 5

 6                                    /s/ Risa L. Entrekin
                                      Registered Diplomate Reporter
 7                                    Certified Realtime Reporter
                                      Official Court Reporter
 8

 9                    * * * * * * * * * *

10                CERTIFICATE OF REDACTION

11          I certify that the foregoing is a true and correct

12  copy of the transcript originally filed with the Clerk of Court

13  on January 13, 2011, and incorporating redactions of personal

14  identifiers requested by Susan R. Redmond, attorney of record,

15  in accordance with Judicial Conference policy.

16          Redacted characters appear as an "X" in the

17  transcript.

18          This 4th day of February, 2011.

19

20                                    /s/ Risa L. Entrekin
                                      Registered Diplomate Reporter
21                                    Certified Realtime Reporter
                                      Official Court Reporter
22

23

24

25
```